UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 13 CR 288-2 |
| v. ) | |
| ) | Judge John J. Tharp, Jr. |
| GREGORY CHESTER, ) | |
| ) | |
| also known as "Bowlegs" ) | |

**GOVERNMENT'S POST-REMAND SENTENCING MEMORANDUM**

The United States of America by its attorney, John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, respectfully submits this supplemental sentencing memorandum. The government requests that this Court re-impose the same 40-year sentence, consisting of a 20-year term on Count One and a consecutive 20-year term on Count Three, to run concurrent to the sentence imposed in Case No. 13 CR 774.

*Procedural History*

   *Convictions and Sentencing*

Chester was indicted in this case with federal narcotics offenses, stemming from controlled buys of heroin. Specifically, Chester was charged with narcotics conspiracy, in violation of 21 U.S.C. § 846 (Count One), and heroin distribution, in violation of 21 U.S.C. § 841(a) (Count Three). He proceeded to trial in 2014 and was convicted of both counts.

Sentencing was postponed during the pendency of racketeering charges in 13 CR 774. Chester later was convicted by a jury of RICO conspiracy. He was sentenced jointly in this case and the RICO case on August 10, 2017.

The Presentence Investigation Report ("PSR") in this case calculated Chester's offense level as 26, based on a drug quantity of more than 100 but less than 400 grams of heroin, and his criminal history category as III, resulting in a Guidelines range of 78 to 97 months' imprisonment. PSR ¶ 87. In the RICO case, Chester's Guidelines range and statutory maximum was life imprisonment.

At the 2017 sentencing hearing, this Court calculated the Guidelines for the RICO conspiracy count as follows: an offense level of 51, reduced to 43 (the top level), and a Guidelines range of life. 8/4/17 Tr. at 30-36. With respect to the heroin counts, the Court's written statement of reasons reflects that it adopted the PSR's calculations.[1]

The Court imposed a sentence of 40 years' imprisonment in the racketeering case, coupled with a concurrent 40-year sentence in this case that was comprised of two 20-year terms on each count running consecutively. It gave an extensive explanation for the sentence: that, as the Hobos' leader, Chester was responsible for

---

[1] A statement of correction to the PSR in this case, dated October 25, 2017, reflects that, at sentencing, it was determined that defendant was under a criminal justice sentence in 13 CR 774 when he committed the instant offense, therefore adding two points to his criminal history points and putting him in criminal history category of IV. This produced, according to the statement of correction, a Guidelines range of 92 to 115 months' imprisonment. It appears that this statement of correction is referring to the findings made by the Court that Chester was on parole for his robbery and kidnapping convictions until October 2006, and that Chester's involvement in the RICO conspiracy extended beyond that date. 8/4/17 Tr. at 32-33.

the gang's conduct, was culpable for Daniels' murder and other murders, supplied heroin to other gang members that fueled violence, and was enriched by that violence. It also explained that Chester "should not be sentenced as a drug dealer" because it would "grossly understate[ ] his culpability and would not reflect the seriousness of the offense of the racketeering activity." 8/10/17 Tr. at 6, 49.

### *Direct Appeal*

Chester appealed. Chester did not challenge his 40-year sentence in the RICO case. He did, however, challenge the concurrent 40-year sentence in this case, arguing that it was substantively unreasonable and the product of procedural error because it was "over six times the recommended Guidelines range." In response, the government noted that the district court did not appear to state on the record its Guidelines calculation for the heroin counts, but argued that the 40-year sentence was the product of a thorough analysis of the § 3553(a) factors and, in any event, the heroin sentences were ordered to run concurrently with the unchallenged racketeering sentence.

The Seventh Circuit affirmed Chester's RICO conspiracy conviction, finding the jury's verdict to be supported by substantial evidence and that there was no error, or harmless error, in the admission of challenged evidence. *See United States v. Brown*, 973 F.3d 667 (7th Cir. 2020). With respect to Chester's sentence in this case— without opining on the Guidelines calculation for the narcotics counts or the substantive reasonableness of the 40-year concurrent sentence—the Seventh Circuit held that not expressly calculating the Guidelines range, and not discussing the

sentence imposed in relation to that range, was plain error. According to the court of appeals, this Court "focused" on the racketeering conspiracy and did not explain why a 40-year sentence for the controlled buys was necessary. It rejected the government's harmless-error argument because, while the sentences were concurrent, "this rationale overlooks possible future developments," such as the possibility that a retroactive statute could cap the sentence for RICO conspiracy at 30 years. *Id*. at 711.

***Argument***

The government requests that this Court impose the same 40-year sentence on remand as it did at Chester's original sentencing, after calculating the Guidelines for the heroin counts and explaining the 40-sentence on those counts in view of the Guidelines range. The government incorporates by reference its prior sentencing submissions in Chester's case, which are available at docket numbers 168, 188, 229, and 311.

   *Guidelines Calculation*

As it did in the district court prior to sentencing (R. 311),[2] the government submits that the appropriate Guidelines range for Chester is life imprisonment (capped by the statutory maximum).

Guideline § 2D1.1(d)(1) provides that where the offense involves a victim killed under circumstances that would be first-degree premeditated murder under 18 U.S.C. § 1111, the court should use Guideline § 2A1.1, which provides a base

---

[2] On appeal, the government assumed, consistent with the written statement of reasons, that the court adopted the PSR's calculations, but did not advocate for a particular alternative calculation.

offense level of 43.³ Applying this cross-reference would be consistent with this Court's discussion of the offense level applicable to the third racketeering activity in the RICO case for heroin trafficking (8/4/17 Tr. at 32-33) and would be supported by this Court's findings at Chester's original sentencing hearing.

Guideline § 1B1.3(a)(1)(B) provides that in the case of a jointly undertaken criminal activity, as here, a defendant is responsible for reasonably foreseeable acts of others within the scope of and in furtherance of the joint activity. Daniels' murder was one such joint activity. This Court has found that Chester "anticipated [Daniels' murder], he acquiesced in it, he wanted it, and he benefitted from it, and he therefore shares culpability for it." 8/10/17 at 57-58. It explained:

> [Chester] knew his fellow Hobos had already signed on to taking care of Keith Daniels. They had already signed on to conduct that included silencing witnesses who threatened the group. I have no doubt whatsoever that Gregory Chester knew exactly what Mr. Poe was about when he went on the run, and that is what was reflected in those cryptic conversations, the fact that, quote, "there gotta be an outcome," and Mr. Chester's agreement that "there gonna be an outcome."

*Id.* at 50. The Court continued:

> As the biggest drug trafficker among the Hobos, Mr. Chester helped directly, through robberies of other drug dealers and indirectly by supplying drugs to other Hobos to distribute, he helped fuel the Hobos' violence. Drug trafficking . . . was intimately tied to their other violent criminal activity.
>
> . . .
>
> [Chester] was part of this group that . . . agreed to enrich themselves through drug trafficking supported by murder and to protect themselves by murdering

---

³ The Seventh Circuit has applied this Guideline in the context of defendants involved in the murder of cooperating witnesses in narcotics investigations and prosecutions. *See United States v. Mitchell*, 635 F.3d 990, 993-94 (7th Cir. 2011).

> those who threatened them, [so] yes, he is culpable for Mr. Moore's murder and all of the other murders that his partners in crime committed.

*Id*. at 48. In other words, under the Guidelines, Chester is appropriately held accountable for the first-degree murder of Daniels, which was within the scope of and in furtherance of his jointly-undertaken criminal activity and was reasonably foreseeable to him.

Pursuant to Guideline § 3C1.1, Chester's offense level should be increased two levels given Daniels' murder—an obstructive act designed to willfully impede the prosecution of the controlled buys conducted by Daniels—as well as for his false statements during the investigation, including in a polygraph examination that is discussed in detail in the government's prior sentencing memorandum.[4] R. 311 at 4.

Additionally, Chester's offense level should be increased by four levels pursuant to Guideline § 3B1.1(a) because Chester was a leader of the Hobos—which was relevant conduct to the narcotics trafficking charged in this case—and the Hobos enterprise involved more than five participants and was extensive. Chester is not entitled to a reduction in the offense level under Guideline § 3E1.1 because he did not accept responsibility for his offense conduct. Accordingly, Chester's adjusted offense level is 49

Regarding criminal history, as the PSR notes, Chester has at least five criminal history points: three points from a 1996 armed robbery conviction; and two points from a second 1996 case that resulted in convictions for aggravated

---

[4] In addition, Chester gave false testimony at the racketeering trial regarding his narcotics trafficking. This Court described his testimony as "incredible." 8/10/17 Tr. at 40.

kidnapping and armed robbery. The resulting Guidelines range is life imprisonment, limited by the 20-year statutory maximum on each count.

### *Section 3553(a) Analysis*

In imposing sentence, a district court must calculate the Guidelines range, give the defendant an opportunity to identify § 3553(a) factors that might warrant a non-Guidelines sentence, and explain its sentence in relation to the § 3553(a) factors. *United States v. Dorsey*, 829 F.3d 831, 836 (7th Cir. 2016). Here—regardless of the applicable Guidelines range—a 40-year sentence, consisting of two consecutive 20-year terms, remains fair, reasonable, and appropriate.

As this Court previously held, a 40-year sentence on the narcotics counts, running concurrently with the 40-year sentence on the RICO conspiracy count, is necessary to reflect the seriousness of Chester's conduct. Chester was one of the Hobos' leaders, and this Court correctly found that he contributed to, embraced, and benefited from the Hobos' violence in his drug-trafficking operation. 8/10/17 Tr. at 47 ("Mr. Chester embraced the murder and mayhem that the group used to enrich themselves and to enhance their power."). Specifically, as this Court explained at Chester's original sentencing, Chester's large-scale drug trafficking played a "central role . . . [in] the Hobos' success." *Id*. at 48. The court cited Chester's trial testimony that he was a large-scale heroin dealer, and his October 22, 2008 statements to CPD, in which he described himself as "the most influential member of the Hobos, the most successful dealer and breadwinner." *Id*. at 36-37. It was his drug trafficking—and his power "because of his success and the examples he provided"—that "gave rise to most

. . . of the violence [the Hobos] engaged in." *Id*. at 37, 48.

In other words, the drug trafficking that is the subject of this case cannot be separated from the activities of the Hobos enterprise: "Drug trafficking wasn't and isn't some sort of isolated component of what the Hobos were about. It was intimately tied to their other violent criminal activity," including but not limited to the murder of Daniels. *Id*. at 48.

Chester's controlled purchases charged in this case also were eclipsed by his far more serious drug trafficking: He was a supplier for other Hobos and he participated in and facilitated robberies of other drug dealers. 8/10/17 at 37. The evidence at trial also proved that Chester and co-defendant Lance Dillard had a sophisticated drug operation. They concealed their activities by using vehicles registered in other people's names, renting vehicles in the name of nominees, using multiple telephone numbers, and dropping telephone numbers after drug deals. Chester's attitude towards his drug trafficking also is significant. As the Court rightly noted, Chester's testimony about why he distributed "pure heroin"—that "[i]t's business. I mean, that's how I eat. That's how I feed my family"—reflected "[n]o concern whatsoever about the families of the people who are buying the poison that was being pedaled." *Id*. at 45.

Further aggravating was Chester's obstructionist conduct and lack of respect for the law. Mid-trial, Chester attempted to smuggle drugs into the MCC. 8/10/17 Tr. at 46. He also gave blatantly false testimony in the RICO trial—testimony in which he denied the Hobos' existence and any participation in robberies, claimed not to be

able to recall a thing about drug quantities that he distributed or his customers, and claimed not to have made any statements to law enforcement in 2008—that reflected that Chester "has little respect for the truth." *Id*. at 39-40.

With respect to Chester's history and characteristics, his prior convictions for firearm possession, armed robbery of a jewelry store, and another armed robbery "grossly underrepresent[ ] . . . Chester's actual criminal history given his acknowledgment, if nothing else, that over the decade between 2004 and 2013, he made his living as a drug trafficker." 8/10/17 Tr. at 42.

In short, this Court reasonably found that Chester "should not be sentenced as a drug dealer," which would "grossly understate[ ] his culpability." 8/10/17 Tr. at 49. Reimposing the same 40-year sentence furthers the goals of specific deterrence, including because Chester has shown no remorse and prior substantial sentences have not deterred his criminal conduct. It also will promote the rule of law, a necessary component of general deterrence. In fact, reconsidering Chester's sentence at this juncture and reducing it on remand would seriously undermine the goals of general deterrence.

*Conclusion*

For the reasons discussed above, the government requests that the Court reimpose a 40-year sentence, consisting of two consecutive 20-year terms, after calculating the Guidelines and explaining its rationale in the context of this case.

                                              Respectfully submitted,

                                              JOHN R. LAUSCH, JR.
                                              United States Attorney

By:    /s/ *Andrianna Kastanek*
        ANDRIANNA D. KASTANEK
        Assistant U.S. Attorney
        219 South Dearborn St., Rm. 500
        Chicago, Illinois 60604