**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 CR 288-2 |
| | ) | Judge John J. Tharp |
| GREGORY CHESTER | ) | |
| | ) | |
| Defendant. | ) | |

**RESPONSE TO GOVERNMENT'S POST-REMAND SENTENCING MEMORANDUM**

Now Comes Defendant Gregory Chester, by and through his attorney, Beau B. Brindley, and provides the following response to the government's post-remand sentencing memorandum:

In its memorandum, the government asks the Court to reimpose the same sentence which was originally imposed and later overturned on appeal in this case: a 40-year sentence, consisting of a 20-year term on Count One and a consecutive 20-year term on Count Three, to run concurrent to the sentence imposed in Case No. 13 CR 774. In doing so, the government asks the Court to ignore the Guidelines, ignore the separate sentence Mr. Chester has already received in case 13 CR 774, and ignore its duty to provide true individual consideration to each case and each count of conviction. The Court should reject the government's position and impose a sentence within the applicable guidelines range.

As acknowledged by the government's memorandum, in its statement of reasons at the time of the original judgment in this case, the Court adopted the PSIR's guidelines calculations for the charges in this case. Initially, the PSIR had calculated a total offense level of 26, a criminal history category of III, and an advisory sentencing range of 78-97 months imprisonment. Mr. Chester concedes that this is the correct Guidelines calculation.

1

However, following the sentencing, the probation officer issued a statement of correction to the PSIR, raising Mr. Chester's criminal history category to IV, and the advisory guidelines range to 92-115 months' imprisonment. The government's memorandum indicates that "It appears that this statement of correction is referring to the findings made by the Court that Chester was on parole for his robbery and kidnapping convictions until October 2006, and that Chester's involvement in the RICO conspiracy extended beyond that date. 8/4/17 Tr. at 32-33." Dkt. 357 at 2 n.1. The government's interpretation of the probation officer's intention appears to be correct. However, that intention is also misplaced. While the RICO conspiracy may have extended to a time prior to the end of Mr. Chester's parole in October 2006, there is no indication that his participation in the conduct that is the subject of the charges in *this* case did. The proper Guidelines for the charges before this Court is, thus, 78-97 months, as indicated in the original PSIR, whose calculations the Court indicated in writing it was adopting.

Although it provides no valid reason to do so, the government now asks the Court to throw out that Guidelines calculation. The government asks the Court to impose Guideline enhancements under §§ 2D1.1(d)(1), 1B1.3(a)(1)(B), and 2A1.1 for the offense involving the murder of Keith Daniels; under § 3C1.1 for obstruction of justice due to the Daniels murder and false statements he made following his RICO arrest including in his testimony during the RICO trial; and under § 3B1.1(a) because he was a leader of the Hobos. Dkt. 357 at 4-6.

The government made all of these same arguments prior to the original sentencing in this case. Dkt. 311; See Dkt. 357 at 4. The Court made no findings agreeing with the government's arguments concerning these Guidelines issues, and instead indicated that it was adopting the Guidelines calculations of the PSIR. That was the correct decision and there is no reason to reconsider it now. Each of the government's Guidelines arguments made sense and were

meritorious with regard to the charges in the RICO case, 13 CR 774. Those Guidelines, or the issues they concern, applied directly to the conduct for which Mr. Chester was convicted in *that* case. All of the conduct identified in the government's arguments here was properly considered by the probation officer and by the Court when determining the guidelines for the RICO charge. The resulting Guidelines calculations properly reflected that the conduct identified now by the government was applicable to the RICO charge in 13 CR 774 but *not* to the heroin charges in this case, to which the Court must give individual consideration.

The government asks the Court to double-count conduct for which it has already held Mr. Chester responsible in another case, a case in which the conduct was actually directly part of the charges he faced. The Court must reject this invitation. Applying enhancements for conduct that has already been properly considered as part of another separate case is neither warranted nor just. There is nothing about the isolated heroin transactions at issue in this case that warrants the same sentence as Mr. Chester's conduct as part of the Hobos racketeering organization. That conduct has already received full consideration and the Court has already meted out an appropriate punishment.

To give the same punishment for these discrete heroin transactions that were charged in this case would not be appropriate under the law of the Seventh Circuit. An uncharged offense may be relevant for sentencing purposes if it was "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Section 1B1.3 is intended "to take account of 'a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing.'" *United States v. Sykes*, 7 F.3d 1331, 1335 (7th Cir. 1993)(*quoting* U.S.S.G §1B1.3 Background Comment). When examining the issue of relevant conduct, the court must consider "'the identity of the participants and their

roles in the events at issue, as well as the nature, structure and location of the allegedly related transactions." *United States v. Chester*, 324 F.3d 875, 879 (7th Cir. 2003)(citing *United States v. Cedano-Rojas*, 999 F.2d 1175, 1180 (7th Cir. 1993)). The government bears the burden of establishing relevant conduct by a preponderance of the evidence. *United States v. Oros*, 578 F.3d 703, 711 (7th Cir. 2009).

The Seventh Circuit has repeatedly cautioned that "Section 1B1.3(a)(2) must not be read to encompass any offense that is similar in kind to the offense of conviction but that does not bear the required relationship to that offense." *United States v. Arroyo*, 406 F.3d 881, 889 (7th Cir. 2005) (emphasis added); *United States v. Bacallao*, 149 F.3d 717, 719-720 (7th Cir. 1998); *United States v. Patel*, 131 F.3d 1195, 1204 (7th Cir.1997); *United States v. White*, 888 F.2d 490, 500 (7th Cir.1989); Sykes, 7 F.3d 1331 at 1336; *United States v. Ortiz*, 431 F.3d 1035, 1040 (7th Cir. 2005) ("[T]he relevant conduct rule has limits. The rule allows sentencing courts to consider quantities of drugs not specified in the counts of conviction, provided that the unconvicted activities bore the necessary relation to the convicted offense.") "The mere fact that the defendant may have engaged in other drug transactions 'is not sufficient to justify treating those transactions as 'relevant conduct' for sentencing purposes.'" *Ortiz*, 431 F.3d at 1041 (*citing United States v. Crockett*, 82 F.3d 722, 730 (7th Cir.1996)) (reversing a district court's finding of relevant conduct); *See, also*, *United States v. Beler*, 20 F.3d 1428 (7th Cir. 1994) (reversing and remanding for reconsideration even where the proffered conduct shared a common accomplice).

In *Sykes*, the government attempted to argue that the fact that whenever the defendant needed money during a thirty-two-month period, she responded by using a false social security number to apply for credit. The government argued further that her motivation was similar because each time she obtained credit to purchase items. The Court found that the government's

4

argument construed similarity and regularity far too broadly. The Court found that "the government's theory describes [the defendant's] conduct at such a level of generality as to eviscerate the evaluation of whether [the conduct] is part of the same course of conduct." *Sykes*, 7 F.3d at 1337.

In this case, the government cannot establish that the Hobos racketeering activity that is the subject of its Guidelines arguments is, in any way, part of the same scheme or plan as the isolated and discrete heroin transactions and agreement that were charged in this case. While it is true that Mr. Chester's involvement in the RICO conspiracy also involved drug dealing, there is no basis to conclude that the transactions in this case bore any relationship to the activity Mr. Chester undertook as part of the Hobos racketeering enterprise, other than both potentially involving drug sales. That is simply insufficient. These facts are not sufficient to constitute relevant conduct under the circumstances of this case. When illegal conduct exists in "discrete, identifiable units," the Guidelines anticipate a separate charge for such conduct. *Id*. at n. 5 (quoting *United States v. Hahn*, 960 F.2d 903 (9th Cir. 1992)).

In this case Mr. Chester is charged with specific and discrete heroin transactions involving particular individuals on specific occasions and a heroin distribution agreement with a specific individual during a specified three-month time period from June to September 2011. Mr. Chester is not charged with conspiring to distribute heroin with other individuals at other times. The offense in this case is simply not the same offense as that charged in the RICO case and there is no basis from which to conclude that the RICO is relevant conduct to the Dillard heroin conspiracy for which Mr. Chester was convicted here.

In addition, the Seventh Circuit cautions against attributing to a defendant as relevant conduct offenses that would subject the defendant to a significantly greater amount of time than

5

would apply to the conduct actually charged in the indictment. The Seventh Circuit has expressed serious concern over scenarios "where the uncharged conducted so influences the sentence that it becomes a case of the tail wagging the dog." *United States v. Sumner*, 265 F.3d 532, 541 (7th Cir. 2001); *United States v. Morrison*, 207 F.3d 962, 968 (7th Cir. 2000); *United States v. Fischer*, 905 F.2d 140, 142 (7th Cir.1990). Here the increase in Mr. Chester's base offense level if the Court were to adopt the government's position would be extraordinary. Mr. Chester would go from a Guideline range of 78-97 months to a Guidelines range of Life imprisonment (capped by the statutory maximum of 40 years if consecutive time was reimposed). This is an increase of more than 4 times the recommended Guidelines sentence. Hence, this is the very kind of case about which the Seventh Circuit cautioned. Treating the RICO activity as relevant conduct would allow that discrete case to generate the bulk of the punishment applicable to Mr. Chester for these charges and create the tail wagging the dog scenario against which the Seventh Circuit warned. A finding of relevant conduct is inappropriate. Mr. Chester should be sentenced based only upon the conduct he undertook as part of this case, not the conduct that he undertook as part of the RICO case, for which he was separately sentenced.

    The government's §3553 arguments similarly revolve around leaning on Mr. Chester's conduct as part of the Hobos RICO conspiracy to argue that the maximum allowable sentence is warranted for him in this case. While the Court is free to consider the conduct at issue in the RICO case when evaluating what kind of person Gregory Chester is and what type of punishment is appropriate here, when doing so it must not lose sight of the fact that it *has* considered all of that when determining the appropriate sentence in 13 CR 774. It must not lose sight of the fact that the government is asking it to use that same conduct, for which it has

already sentenced Mr. Chester, to more than quadruple the sentence he is otherwise facing for a discrete agreement involving the distribution of heroin. It must not lose sight of the fact that, even though a message must be sent—both to Gregory Chester and to the public at large, that serious offenders will receive serious punishment—that message has already been sent.

The RICO offense was an incredibly serious one. The guidelines for *that* offense were life imprisonment. The Court considered all of the §3553 factors and imposed a sentence of 40 years—a sentence that, even though technically below the applicable guidelines in that case, was still an incredibly serious one. Heroin distribution is also a very serious offense, but not all serious offenses are cut from the same cloth. The fact that Mr. Chester also participated in another serious offense (for which he is separately punished) does not mean that he must receive a sentence that is four times the Guidelines range that is applicable to the heroin offenses before the Court in this case. Such a sentence would not promote respect for the law. It might promote fear of the law, but that is not the same as respect and it should not be the Court's goal when sentencing a criminal defendant. It might even promote scorn and disrespect for the law if the public learns that a man who has already been sentenced to 40 years in prison for specific conduct in one case was then issued a sentence more than four times greater in another case for that very same conduct underlying the initial sentence. That is an outcome the Court should seek to avoid in its sentencing decision in this case.

That is not to say that the Court should wholly ignore the government's §3553 arguments when determining what a just and appropriate sentence should be in this case. The conduct they have outlined should inform this Court's evaluation of the kind of person that Gregory Chester is and the kind of punishment's that may be appropriate based on his conduct *in this case*. The government's arguments certainly militate against a sentence below the Guidelines range. They

7

reasonably suggest that a sentence at the low end of the 78-97 month Guideline range is inappropriate in this case. They may even arguably imply that the 97 month top end of the Guidelines range is somehow insufficient. But what they do not do is provide a just and rational reason to take that 97 months and increase it by more than 4 times to 40 years' imprisonment.

The high end of the Guideline range, 97 months, is sufficient but not greater than necessary to meet all of the purposes of punishment under §3553. It is a sentence that promotes respect for the law and recognizes the seriousness of the offense without conflating it with the seriousness of some other, separate offense for which Mr. Chester has already been punished.

WHEREFORE, Mr. Chester respectfully requests that this Court impose a sentence of no greater than 97 months' incarceration.

Respectfully submitted,
GREGORY CHESTER

By:     s/ Beau B Brindley

LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd.
Suite 1410
Chicago, Illinois 60604
312.765.8878